# THE UNITED STATES DISTRICT COURT  FOR THE DISTRICT OF MARYLAND
## (Northern Division)

Officer Steven Angelini
402 Kosoak Road
Middle River, Maryland 21220
Plaintiff
v.
Kevin Davis,
in his official capacity as Commissioner
of the Baltimore Police Department
c/o 601 E. Fayette Street
Baltimore, Maryland 21202
(In his official capacity)

and

Baltimore City Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
SERVE ON:
David Ralph, Esq.
Interim City Solicitor
Baltimore City Department of Law
City Hall
100 N. Holiday Street, Suite 101
Baltimore, MD 21201
Defendants

**Case #1:17-CV-2354**

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Officer Steven Angelini by and through his attorneys, Kurt E. Nachtman, Jeremy Eldridge and Eldridge & Nachtman, LLC, sues Baltimore City Police Department and Kevin Davis, in his official capacity as Commissioner of the Baltimore Police Department for sexual harassment, sex discrimination and retaliation and for violating the Plaintiff's right to free speech under the First Amendment of the U.S. Constitution.

1

## INTRODUCTION

1)      This is a civil action seeking compensatory and punitive damages against the Baltimore City Police Department to redress its actions of for sexual harassment, sex discrimination and retaliation against the Plaintiff in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. and deprivations of Plaintiff's rights contained in the First Amendment of the U.S. Constitution, made actionable pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

2)      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331.

3)      Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e -5 (f) and 28 U.S.C. § § 1391(b), since the unlawful employment practice was committed in this district, because the Defendants reside in this judicial district, and a substantial part of the events giving rise to this case occurred in this judicial district.

4)      The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5)      Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission. (Exhibit 1).

6)      The Plaintiff received a Right-to-Sue Letter from the Equal Employment Commission more than 180 days after he filed his Charge of Discrimination. (Exhibit 2).

7)      The Plaintiff has bought suit within 90 days from the date in which he received the May 18, 2017, Right-to-Sue Letter.

## PARTIES

8)      The Plaintiff, Officer Steven Angelini, is a resident of the State of Maryland who resides in Baltimore County.

9)      The Defendant, the Baltimore City Police Department is a government agency enforcing the criminal laws of the State of Maryland the City of Baltimore in Baltimore City.

10)      The Defendant, Kevin Davis is the Baltimore Police Commissioner for the Baltimore City Police Department and is gainfully employed in of the State of Maryland and the City of Baltimore.

## FACTS COMMON TO ALL COUNTS

11)      Officer Steven Angelini, Plaintiff, (hereinafter "Angelini" or "Plaintiff" is a member of the Baltimore City Police Department ("BPD"). Angelini was born and raised in Baltimore, growing up in the Highlandtown neighborhood of the Southeast Police District and attending and graduating Archbishop Curley High School.

12)      Angelini entered service with the BPD on May 4, 2006.  He was a highly decorated officer while posted at all assignments prior to the Southeast District and prior to the filing of the discrimination complaint outlined below.

13)      After a period of time Angelini sought to transfer to Southeast District ("SED") because his family lived in the Southeast District and mother and father raised their

family.   Angelini's parents still reside there.   Angelini's request for transfer was subsequently granted and he was transfer to SED.

14)     In January of 2012, Angelini's father, Nello Angelini called the police to report that his ex-boyfriend had stalked and harassed him.  SED patrol responded to the call for assistance and took a report.  The ex-boyfriend was charged, arrested, and received a PBJ for his actions.

15)     As a result of this incident, it became apparent, to the Plaintiff, that his father, a married, Italian-American male who has 4 adult male children, was gay. Angelini father's sexual preference was a very private and personal matter to Angelini and his family.

16)     Shortly thereafter Plaintiff's father's sexual orientation became a very public topic of gossip at the SED Police Station.   Angelini became increasingly sensitive to the gossip about his father and to inappropriate sexual remarks made by other members of the BPD.

17)     On or about October 2, 2012, Angelini discovered graffiti in the men's locker room stall at the BPD. The text of that graffiti was: "Angelini+Quaranto R HOMO'S". Quaranto refers to Angelini's then patrol partner, Officer Daniel Quaranto.

18)     Initially, Plaintiff pointed out the graffiti to the internal affairs investigator placed in the SED, Sergeant Kenneth Williams. The next day Plaintiff filed a formal "Form 95" Complaint which ultimately made its way to Major William Davis, commander of the SED.

19)     Following the complaint, on October 5, 2012, Angelini had an appointment with
EOC (BPD's internal EEOC office) at 3:30 PM to formalize his complaint regarding the
graffiti.   Before reporting to the EOC office on October 5, 2012 at 2:55PM while
clocking in for work, Sgt. Euttice Brickus, a female officer, made a comment to
Angelini regarding his attire and its workplace appropriateness in front of all the other
SED patrol officers during roll call.  Angelini felt this was inappropriate and was pointed
out in light of the familial, sexual orientation information that had been broadcast to the
district.  He included this inappropriate comment in his formal complaint.

20)     Angelini indicated that he had a change of clothes which he would do before
working the desk at the SED after his appointment. Sgt. Brickus said, "You just want to
show off your pecs down there" (when going to the EOC meeting). She also then later
said, "the Major doesn't want you to go down there and make this formal complaint,
why can't you let this go, why does it affect you?" This inappropriate sexual comment,
in front of Angelini's co-workers, made Angelini feel uncomfortable, particularly given
his familial circumstances and the nature of his prior complaint.   Angelini felt this
statement was in retaliation for filing a complaint and another example of sexual
harassment.

21)     In the formal complaint Angelini stated that "the comment made on the bathroom
stall is offensive and should be investigated properly."   Because of the harassing
comment from Brickus and the graffiti, Angelini requested a transfer to a different

district[1] while the investigation is being conducted and reminded the command staff that the comment "HOMO" affects him personally.  (Exhibit 3).

22)     On or about January 17, 2013, Angelini parked his personal vehicle in a parking spot designated for particular officers.  At the time Angelini was going into the Police Station briefly to attend roll call and would move his vehicle after once the current shift left.  This is a common practice Angelini has observed many officers do this on a regular and repeated basis, as the parking lot at the SED is small and often over crowded with vehicles.

23)     Before roll call began, Sgt. Brickus ordered Angelini to move his vehicle and ordered him to write a written explanation as to why he was in that parking spot.  After his shift was completed, Angelini was also charged with insubordination, had his police powers suspended, and was ordered to undergo a medical evaluation as a result of this incident.

24)     Ultimately Plaintiff was singled out, despite the fact that other officers regularly park in such spots in order to perform quick business in the SED.

25)     On or about January 25, 2013 was ordered to perform a random drug and alcohol test and undergo psychological screening.  This caused severe embarrassment and anxiety to Angelini and was retaliation for the EEOC complaint filed in October 2012 as all of the items have been orchestrated by Sgt. Brickus. On or about January 29, 2013, Plaintiff was declared "fit for duty" yet he remained suspended from duty.

---

[1]  On October 3, 2012, Angelini also made a separate formal request (Form 70) for a transfer to a different police district.  That request was denied.

26) On or about February 1, 2013 Baltimore City Police Department EEOC determined that Angelini's complaint failed to meet the appropriate criteria for any violation.

27) On or about February 18, 2013 Angelini requested a transfer to a different district for being in a "hostile work environment and fear that I will be retaliated against again. This is the second request for a transfer." That transfer was also denied.

28) On or about March 28, 2013 Plaintiff received a call for a discharging of a firearm. Plaintiff and his partner responded and found an armed person in a residential back yard pointing a shotgun in the air and firing rounds. Bullets were reported as going through neighbors homes. Plaintiff ordered him to put down the firearm and slowly turn around. The armed suspect turned around with the shotgun and Plaintiff fired his service weapon at the suspect. The suspect later succumbed to his injuries at the hospital.

29) The shooting was cleared as justified by the State's Attorney's Office. During the course of the shooting, the suspect was disarmed and two firearms were recovered from the shooter's person. Two other AR-15, high-powered semi-automatic rifles were recovered from the shooter's house. The guns were warm to the touch.

30) It is customary for any BPD officer who recovers a gun from the City of Baltimore to receive a commendation.

31) Plaintiff was never cited for his shooting, never received any commendations for valor, and was never credited for this action.

32) On or about, the next morning, March 29, 2013, during roll call, Sgt. Brickus told other police officers that Angelini did a bad job on his shooting and that it was not

justified.  Sgt. Brickus was not present during the incident and the incident was investigated by BPD Homicide, so Sgt. Brickus would have no reason to know any details of this incident besides hearsay and gossip.

33)      On or about April 13, 2013, after Plaintiff learned that Sgt. Brickus had a conversation with BPD Officer Michael T. McQuade where Brickus admitted how she conspired to retaliate against him for the EEOC complaint and get Plaintiff fired. Plaintiff again requested a transfer to a different district.  That request was denied.

34)      On or about April 21, 2013 Sgt. Brickus left a voicemail message with the same Officer Michael T. McQuade confirming the conversation of April 13, 2013.  Plaintiff has a digital copy of that voicemail message.

35)      On or about April 21, 2013 Plaintiff requested another transfer.

36)      On or about April 23, 2013, Plaintiff, having been denied multiple transfer requests, asked to be reassigned to a different sector and shift after submitting another transfer request. The harassment continued.

37)      On or about June 12, 2013 Angelini conducted a water rescue at Boston and Newkirk Street.  Fire and rescue crews had not arrived and a vehicle was submerged with water rising up the windows.  Angelini sprang into action but submerged his duty belt and equipment.  After the water rescue, he requested a new duty belt, which was damaged.  This request was denied.

38)      On June 23, 2013 Angelini requested a meeting with command staff regarding the continued harassment and retaliation for his EEOC complaint.  Prior to June 23, 2013 he

had been given poor assignments, detailed to special events, moved around to different shifts, and had his post car taken away.

39)     On or about June 29, 2013, Plaintiff passed out from exhaustion and dehydration while at work.  He was rushed to Mercy Medical Center.  Plaintiff was released and not permitted to medically work from June 29 through July 1, 2013 with instructions to report to BPD medical.  BPD Medical reviewed Angelini on July 2, 2013 and they instructed him to stay home medically until July 10, 2013.

40)     On or about July 4, 2013 BPD officer Sgt. Eric Januck came to Angelini's house and placed him in the back of a police car then drove him to Mercy Medical Center to re-review his records, despite him being medically placed out of service until July 10, 2013.  Sgt. Januck was ordered to do this by Sgt. James Brokus (Acting Lt.)

41)     Later on or about July 4, 2013 Plaintiff requested another transfer.  On July 9, 2013 Plaintiff received the request to transfer form back from supervisors, torn into several pieces.  Later Plaintiff was informed that his transfer would never be approved if he wrote "hostile work environment" on any of the forms by Lt.Charles Williams and Sgt. James Brokus.

42)     On or about July 28, 2013, Sgt. Brokus admitted to Plaintiff that there is a whole "case folder" on him to get him fired due to his EEOC complaint.  Sgt. Jackson then filed formal disciplinary charges on Plaintiff for failing to turn in a report on time.  Both Sgt. Brokus and Jackson used profanity and were screaming and yelling at him in an office.  Plaintiff began to feel as though he were going to faint again.  A medic was called.

43)     Plaintiff was diagnosed by a medic with High blood pressure and was medically suspended by Lt. Williams.  He then filed a complaint with Internal Affairs and with the BPD internal EEOC.  The BPD medical office cleared Angelini for duty.

44)     On or about July 28, 2013 Angelini submitted a request for transfer form, again. This time it said, "I would like to change districts because I need a change." That request was granted.

45)     On or about August 4, 2013, Plaintiff was summoned to a meeting with Sgt. Derwin Jackson and Lt. John Windle's.  The officers told him he was no longer permitted to wear his personal body camera on his lapel.  Plaintiff had been wearing his body camera[2] for traffic stops since 2012.  His body camera was responsible for gathering evidence in many cases leading to convictions and also cleared Angelini of a false allegation regarding a traffic stop for Angelini and Sgt. Loeffler.  Plaintiff complied with that request.

46)     On or about August 6, 2013, Plaintiff was formally transferred to the Northeast District ("NED"). SED commanders had already contacted NED commanders, Plaintiff was required to have a Sgt ride with him for the first three weeks on the job in the NED, something totally uncommon for a BPD officer with 7 years of experience working on the streets.  NED commanders never followed through with this harassment.

47)     Prior to making the formal EEOC complaint, Angelini was a highly decorated and regularly recognized police officer, receiving numerous citations and awards for his

---

[2] Body Cameras are now standard issue for all Baltimore Police Officers

workplace achievements. After making the formal complaint regarding the graffiti, Angelini continuously and repeatedly suffered retaliation and harassment for his Complaint. He has been repeatedly denied transfer requests and has not received recognition for any workplace accomplishments.

48)     Plaintiff has continued to have difficulty in the working environment anytime he comes into contact with officers from the SED.  While at NED, he has received numerous community citations but continues to be harassed by members of the SED because of his EEOC complaint.

49)     During his time at SED, after making the initial complaint, he was denied proper equipment, given the worst shifts, and received a post car without working HVAC, all in retaliation to his complaint.

50)     Plaintiff maintains that he was being singled out because of his complaint to EEOC, whereby any minor infraction would become a major workplace issue in order to embarrass and harass Angelini for filing his EEOC Complaint.

## <u>COUNT ONE</u>
## SEXUAL HARASSMENT, SEX DISCRIMINATION AND RETALIATION IN VIOLATION TITAL VII OF THE CIVIL RIGHTS ACT OF 1991.

51)     Plaintiff incorporates by reference and re-alleges the allegations contained in the Exhibits attached hereto and preceding paragraphs, as if fully set forth below.  The Plaintiff further states:

52)     Defendants discriminated against Plaintiff with respect to terms and conditions of

his employment on the basis of his sex and subjected him to sexual harassment, all in

violation of Title VII of the Civil Rights Act of 1991.

53)     Plaintiff complained to Defendants about the sexual harassment she experienced

and otherwise opposed practices made unlawful by Title VII.

54)     Defendants retaliated against Plaintiff because of his complaints and opposition to

harassment.

55)     Plaintiff's sex and his complaints of sexual harassment and retaliation were

motivating factors in Defendants' decision to treat Plaintiff differently and subject him

to a hostile work environment.

56)     As a proximate result of Defendants' acts and omissions, Plaintiff has in the past

and will in the future suffer damages as set forth above.

57)     Defendants acted with reckless indifference to Plaintiff's federally protected rights.

58)     The harassment and retaliation against Plaintiff, which was permitted and fostered

by the Department, was a result of because of Plaintiff's EEOC Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for

injunctive relief, and for damages in an amount which will fully and fairly compensate

him for his injuries and damages, for punitive damages in an amount sufficient to punish

Defendants and deter others, for interest as allowed by law, for attorney's fees, expert

fees, for the costs of this action and for such other relief, as may be just in the

circumstances and consistent with the purpose of the Title VII.

## <u>COUNT TWO</u>
## FIRST AMENDMENT RETALIATION - FREEDOM OF SPEECH
## 42 U.S.C. § 1983

59)     Plaintiff incorporates by reference and re-alleges the allegations contained in the

Exhibits attached hereto and preceding paragraphs, as if fully set forth below.  The

Plaintiff further states:

60)     The harassment and retaliation against Plaintiff, which was permitted and fostered

by the Department, was a result of because of Plaintiff's internal Complaints and his

EEOC Complaints.

61)     Plaintiff asserts that he was unjustifiably subjected to retaliation, harassment,

threats, and an intolerable and hostile work environment by the Defendant as a result of

his internal Complaints and his EEOC Complaints.

62)     Plaintiff asserts that he was unjustifiably investigated by the Internal Affairs

Divisions of the Department.

63)     Plaintiff asserts that a causal relationship exists between his protected expressions

on matters of public concern and these adverse employment actions.

64)     The actions complained of herein violated the Plaintiffs right to free speech under

the First Amendment of the U.S. Constitution.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for

injunctive relief, and for damages in an amount which will fully and fairly compensate him

for his injuries and damages, for punitive damages in an amount sufficient to punish

Defendants and deter others, for interest as allowed by law, for attorney's fees, expert fees,

for the costs of this action and for such other relief, as may be just in the circumstances.

Respectfully submitted,
Steven Angelini
By and Through Counsel

/s/ Kurt E. Nachtman
Kurt E. Nachtman
Federal Bar # 29838
Eldridge & Nachtman, LLC
217 North Charles Street/ 3rd Floor
Baltimore, MD 21201
kurt@enlawyers.com
443-559-4384
Fax 443-288-6633

/s/ Jeremy Eldridge
Jeremy Eldridge
Federal Bar # 29830
Eldridge & Nachtman, LLC
217 North Charles Street/ 3rd Floor
Baltimore, MD 21201
Jeremy@enlawyers.com
443-559-4384
Fax 443-288-6633

## DEMAND FOR A JURY TRIAL

The Plaintiff, Officer Steven Angelini by and through his attorneys, Kurt E

Nachtman, and Jeremy Eldridge respectfully request that his case be tried before a jury.

/s/ Kurt E. Nachtman
Kurt E. Nachtman
Federal Bar # 29838

14

Eldridge & Nachtman, LLC
217 North Charles Street/ 3rd Floor
Baltimore, MD 21201
kurt@enlawyers.com
443-559-4384
Fax 443-288-6633

/s/ Jeremy Eldridge
Jeremy Eldridge
Federal Bar # 29830
Eldridge & Nachtman, LLC
217 North Charles Street/ 3rd Floor
Baltimore, MD 21201
Jeremy@enlawyers.com
443-559-4384
Fax 443-288-6633